**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS (HOUSTON DIVISION)**

| | | |
|---|---|---|
| **RENAE HEUGATTER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. **4:25-cv-05683** |
| | ) | |
| v. | ) | |
| | ) | |
| **BANK OF AMERICA, N.A., et al.** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A
FIRST AMENDED COMPLAINT**

COMES NOW, the Plaintiff, Renae Heugatter, by undersign counsel, moves for Leave to File an Amended Complaint and in support thereof, she states as follows:

1.     On November 25, 2025, Plaintiff instituted this action in this court against defendants, including but not limited to Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Transunion"), (collectively, the "CRAs" or "CRA Defendants"). *See* ECF No. 1.

2.     The CRA Defendants filed their respective Answers to the Complaint on January 6, 2026, January 27, 2026, and February 4, 2026. *See* ECF Nos. 11, 17 & 20.

3.     On April 17, 2026, the CRA Defendants filed a Joint Motion for Judgment on the Pleadings. *See* ECF No. 46.

4.     On May 8, 2026, the Plaintiff filed a Notice with the court in which she apprised the court of her intention to address the CRA Defendants' Motion for Judgment on the Pleadings by moving to amend her Complaint.

5.     Moving for leave to amend a complaint is a proper mechanism to address a pre-discovery dispositive motion, e.g. Rule 12(b) motion to dismiss or 12(c) motion for judgment on

1

the pleadings. *Sekil v. ADT Sec. Servs., Inc.*, 2008 WL 4844209, *3 (S.D. Tex. Nov. 3, 2008) ("Parties often respond to motions for judgment on the pleadings, as Sekil has done, by amending their pleadings to 'amplify a previously alleged claim ...") (citing 6 Charles Alan Wright, Arthur R. Miller, & Mark Kay Kane, *Federal Practice & Procedure* § 1474 at 533 (2d ed. 1990)); *Ochoa v. Harris Cnty. Sheriff Deputies*, 2024 WL 4132671, *4 (S.D. Tex. Sep. 10, 2024) ("Generally, when a plaintiff seeks to amend a complaint in response to a motion to dismiss and when that amendment seeks to cure the deficiencies identified in the motion, 'the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave.'") (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008); then citing *Louisiana v. Bank of Am. Corp.*, 2020 WL 3966875, *2 (M.D. La. July 13, 2020) (same); then citing *Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*, 2016 WL 4429953, *2 (E.D. La. Aug. 22, 2016) (holding that given the new allegations and claims in the proposed amended complaint, it would be more efficient to deny the pending motions to dismiss as moot and allow the defendants to file renewed motions addressing the amended complaint)).[1] *Also see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)) ("[D]istrict courts often afford

---

[1] *And see Doe v. Franklin Bank, S.S.B.*, 2008 WL 11334179, *4 (W.D. Tex. Sep. 3, 2008) (A motion that "seeks leave to amend his complaint to address …most if not all of the issues raised by Defendants …. should be granted."); *Gladys City Company v. Linde, Inc.*, 2025 WL 1737795, *3 (E.D. Tex. Jul. 23, 2025) ("Gladys is merely seeking to amend its pleadings to conform its claims against Thomas to the federal pleading standard. Therefore, the requested leave is appropriate as it serves to clarify and amplify Gladys's factual allegations as opposed to asserting new allegations."); *Davis v. Vilsack*, 2026 WL 178593, *3 (W.D. La. Jan. 22, 2026) ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided and will expedite determination of issues that otherwise might be raised seriatim.") (citing FED. R. CIV. P. 15 advisory committee's note to 2009 amendments); *Williams v. Nation Star Mortgage, LLC*, 2021 WL 7286010, *3 (M.D. La. Jul. 2, 2021) ("As Plaintiff's Motion for Leave was filed in response to Defendant's Motion to Dismiss, the Court finds this factor weighs heavily in favor of finding good cause, despite it being filed almost a year after expiration of the deadline to amend);.

plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless ... the defects are incurable or the plaintiffs ... are unwilling or unable to amend in a manner that will avoid dismissal.").

6.      "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation omitted)

7.      Nothing in the record could support the Court finding there was undue delay, bad faith or dilatory motive on the part of the Plaintiff. And considering this is the Plaintiff's first motion for leave to amend the complaint, the motion should not be denied for failure to cure deficiencies by amendments previously allowed.

8.      However, the pending Joint Motion for Judgment on the Pleadings implicates an analysis of the futility prong. *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile. An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. Therefore, we review the proposed amended complaint under the same standard of legal sufficiency as applies under Rule 12(b)(6).") (internal citation and quotation marks omitted)

9.      The Joint Motion for Judgment on the Pleadings argue the operative Complaint does not allege a factual inaccuracy. *See* ECF No. 46, Pgs. 5, 6, 9, 11, 12, 14, 16.

10.      While the Plaintiff believes the original complaint sufficiently stated an inaccuracy, the Amended Complaint ends any colorable controversy on that issue.

11. With respect to the TTUC tradeline, the Amended Complaint alleges the TTCU account was inaccurate because it was incomplete.

12. More specifically, the Proposed Amended Complaint ("PAC") alleges the TTCU tradeline omitted relevant mitigating information, including that joint account holder was her husband, that they got divorced in November 2022, that the court divested all of her interest in the account and awarded it Plaintiff's ex-husband, that loan was never delinquent when Plaintiff was a joint account holder, that ex-husband agreed that he was solely responsible for making payments, that when the loan became delinquent the Plaintiff caused the ex-husband cure the delinquency, and that Defendants failed to mark the account as disputed. *See* PAC ¶¶ 21-26 & 68.

13. With respect to the BOFA tradeline, the PAC alleges the Plaintiff made her payment for the March 2025 payment before the due date, that BOFA reported that Plaintiff did not make her payment despite receiving her payment, that BOFA has a pattern of reporting its customers as late when they were not late, and that the CRAs are aware that BOFA reports debtors as late when they were not late, that BOFA's actions or lack of actions false were the *sole* reason Plaintiff's payment was not credited in time and that Defendants failed to mark the account as disputed. *See* ¶¶ 32-39 & 68.

14. Additionally, the PAC alleges that Plaintiff requested a consumer statement be added to her file in July 2025 and February 2026. *See* PAC ¶¶ 52, 53, 65-67, but that the CRAs never added her consumer statement to her credit file or included her consumer statement in subsequent credit reports. *Id.*, ¶ 68.

15. The PAC's allegations regarding the TTCU should be granted because they state a plausible claim against Equifax and Experian. More specifically, the PAC alleges the TTCU was *incomplete* and that the omitted information—the account was primarily the responsibility of the

ex-husband after the divorce and that Plaintiff disputed the account was her responsibility—are sufficient to state a claim. *Radley v. Experian Information Solutions, Inc.*, 2018 WL 3210515, *1 & 4 (D.N.J. Jun. 29, 2018); *Williams v. Experian Information Solutions, Inc.,* 2024 WL 643197, *1, 2 & 5 (W.D. Wash. Feb. 15, 2024); *Fields v. Trans Union, LLC*, 2018 WL 1508746, *2, 3 (E.D. Pa. Mar. 27, 2018); *Hillis v. Trans Union LLC*, 2014 WL 2581094, *3-4 (E.D. Pa. Jun. 10, 2014)

16.     The PAC's allegations regarding the BOFA should be granted because they state a plausible claim against all Defendants. More specifically, the PAC alleges the BOA was inaccurate or misleading because she made the payment on time, BOFA was the *sole* reason for the payment not being credited and that the Plaintiff disputed the account was late. *Zimmerman v. Bank of America, N.A.*, 2026 WL 1471875, *3 (N.D. Cal. May 26, 2026); *Wallace v. Equifax Information Services, LLC*, 2024 WL 218622, *3 (E.D.N.C. Jan. 19, 2024); *Hurst v. Equifax Info. Servs.*, 2021 WL 5926125, *8 (W.D. Tex. Dec. 15, 2021); *Buell v Experian Information Solutions Inc.*, 2024 WL 1461212, *2-3 (N.D. Ind. Apr. 3, 2024); *Finney v. Bank of America, National Association*, 2025 WL 3496674, *3 (W.D. Ky. Dec. 5, 2025); *Abukhodeir v. AmeriHome Mortg. Co., LLC*, 2021 WL 3510814 (M.D. Fla. Aug. 10, 2021); *Bush v. RoundPoint Mortg. Servicing Corp.*, 122 F. Supp. 3d 1347, 1348 (M.D. Fla. 2015).

17.     The PAC's allegations regarding the BOFA should be granted because they state a plausible claim against the CRA Defendants. Specifically, the PAC alleges that Plaintiff disputed the TTCU and BOFA accounts in June 2025 and requested a consumer statement in subsequent disputes in July and November 2025. *Chaitoff v. Experian Info. Sols.*, 79 F.4th 800 (7th Cir. 2023) ("Experian could not know whether Chaitoff believed his dispute had been resolved until it heard back from him. But it did, and Chaitoff's second letter satisfies § 1681i(b)'s simple formulation. That was enough to trigger Experian's obligations to note the dispute under § 1681i(c).")

18.    The proposed Amended Complaint is attached.

WHEREFORE, for the foregoing reasons, Plaintiff, Renae Heugatter, respectfully requests that this Honorable Court grant her Motion for Leave to File an Amended Complaint.

Dated:    June 5, 2026                    Respectfully submitted:


                                        /s/ Felix Terrence Readus
                                        Felix Terrence Readus
                                        Readus Law
                                        Texas Bar No. 24064163
                                        S.D. Tex. Bar No. 2799835
                                        6335 Gulfton St.
                                        No. 217
                                        Houston, TX 77081
                                        (713) 591-5032
                                        principal@readus.com
                                        ATTORNEY FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I caused to be served a copy of **Plaintiff's Motion for Leave to File an Amended Complaint** and all attachments thereto to be electronically filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to all counsel of record.


                                        /s/ Felix T. Readus
                                        Felix T. Readus


6

NOTES

whereupon Plaintiff and her ex-husband "entered into a property settlement agreement where Plaintiff's ex-husband would take ownership of their jointly owned home

??? Plaintiff subsequently "executed a quitclaim deed conveying the home completely to her ex-husband," retaining no current ownership interest in the house???

misrepresents Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness

Plaintiff also disputed the accuracy of the RMC mortgage directly to RMC

RoundPoint either failed to notify Equifax to mark that trade line as having been disputed, or Equifax failed to so mark at after RoundPoint notified it that it was disputed

that the CRAs either engaged in no investigation or did not engage in a reasonable investigation

denied for various loans and extensions of consumer credit as a result of the inaccurate information on her credit reports, as well as by losing credit opportunities, and by suffering "informational harm, credit defamation and emotional distress"

to report these late payments without also including some verbiage regarding this assignment of responsibility for the loan payments.

had future creditors known Plaintiff's husband was paying the debt, the creditors "may [have] view[ed] [Plaintiff] as a slightly more favorable credit risk." And Santander's omission of these details might be "expected to have an adverse effect" on Plaintiff's credit prospects.

the reported mortgage was the responsibility of her ex-husband

The Trans Union report classifies the Car Loan as a "joint account," but makes no other reference to Plaintiff's ex-wife or her obligation under the divorce decree to pay the Car Loan's balance.

Although Plaintiff still technically owed the Car Loan balance to Santander, paying the balance was primarily his ex-wife's responsibility under the divorce decree. Thus, the Car Loan's delinquent status and eventual charge-off more clearly reflect Ms. Hillis's inability to repay debts than Plaintiff's.

But to omit the fact that these payments were late *because* of that error would imply "a much greater degree of financial irresponsibility."

the omission of that fact implies that Plaintiffs were simply late on their mortgage payments *sixteen times.* This undoubtedly would be—if proven—a materially misleading impression that would

7

satisfy the first element

would the addition of the Dismissal Order to Plaintiff's credit report affect Plaintiff's creditworthiness? it would because the debt was being repaid by someone else and therefore, was not her responsibility or more income, or not being ignored.

It does not know whether a lender would make a different decision about Plaintiff's creditworthiness based on the existence, or not, of the Dismissal Order.

to annotate that the payment was late solely due to the fault of a third-party-renders the late payment characterization incomplete and misleading, as it implies that it was Plaintiffs' fault that the payment was late.

Thus, the late payment characterization, without more, implies that Plaintiffs are not a good credit risk, as they do not make their payments on time.

Plaintiff authorized Bank of America to process the payment. Despite Plaintiff's payment, Bank of America failed to credit her payment. Alternatively, Bank of America mistakenly or intentionally stopped Plaintiff's payment. Bank of America was solely responsible for it not receiving the funds by [date] [Plaintiffs Harry and Elizabeth Bush allege the following in their complaint (Doc. No. 1): In June of 2014, Plaintiffs refinanced the mortgage on their home; the mortgage was held by Defendant Roundpoint Mortgage Servicing Corporation. (¶ 10, 38). The refinancing was organized by non-party Priority Financial Services ("PFS"), and PFS selected non-party Resource Title Company ("RTC") to handle all aspects of the closing, including ensuring that Defendant was paid the full balance of the outstanding mortgage from the funds from the new mortgage. (¶ 10, 38). However, RTC mishandled the closing and misplaced the note for the loan, which resulted in a short delay in transmitting the funds to Defendant. (¶ 10, 38). RTC was solely responsible for the late payment to Defendant, and RTC has been fined by the Florida Attorney General for its neglect. (¶ 10, 38).]

Defendant continued to report that Plaintiffs made a late payment, without noting that the late payment was disputed and/or that Plaintiffs were not at fault for the late payment. (¶ 31, 59). As a result of Defendant's failure to provide complete information about the late payment, Plaintiffs have been damaged by increased interest rates charged by existing creditors, an inability to obtain new loans with the best interest rates, decreased credit scores, out-of-pocket expenses incurred in disputing the credit reports, and emotional distress. (¶ 32, 60).

it was inaccurate and misleading for Nationstar not to make a notation that Williams' ex-wife had assumed responsibility to make the payments.

it was incomplete and misleading – and therefore inaccurate under the FCRA – to report these late payments without also including some verbiage regarding this assignment of responsibility for the loan payments."

it was inaccurate for a credit information furnisher or CRA to report the debt on the plaintiff's credit report without also noting that the divorce decree impacted their obligation to repay

8

had future creditors known Plaintiff was indemnified for her liabilities by her former spouse, the creditors "may [have] view[ed] [Plaintiff] as a slightly more favorable credit risk."

Plaintiff submitted a "brief statement setting forth the nature of the dispute" pursuant to § 1681i(b) to the CRA Defendants. Plaintiff alleged to submitted such a statement in [date]

**Allege that he did submit his payment to BOA.**
**Allege that**

Allege what happened – asked him to pay the debt and then he paid

Regardless of how a defendant attempts to frame an allegation, if the Complaint alleges that the Plaintiff submitted or made a payment, then that allegation supports a claim that a late payment notation was inaccurate. *McCracken v. Ally Bank*, 2025 WL 2374831, *1 (C.D. Cal. Jul 14, 2025) (Here, Plaintiff does not allege a legal dispute as to who was responsible for an unpaid or late balance, rather, he alleges that he was never 30 days late on any payment to Ally and that the CRA Defendants' reporting that his payments were 30 days late was therefore inaccurate or misleading. The Court finds that *Carvalho*, which was decided at the summary judgment phase, does not provide a basis to dismiss Plaintiff's case at this early stage in litigation.") (internal citation and quotations omitted) *See Serhan v. Hyundai Cap. Am.*, 2023 WL 6787810 at *4 (C.D. Cal. Sept. 07, 2023)

If the fault lies solely with the furnisher, then it is inaccurate and/or misleading to report that the Plaintiff was late without further context. *Regalado v. Experian Info. Sols., Inc.*, 2023 WL 6393222, *4-5 (D. Nev. Sept. 30, 2023) (concluding that, although the plaintiff "admit[ted] that a missed payment occurred when the funds for his ... loan payment did not get withdrawn from his bank account," where the lender "admitted to the processing error and expressly represented to him that the missed payment would not be reported and would not impact his credit report," but nevertheless "shared missed payment information with the [credit reporting agencies], which [negatively] impacted [the p]laintiff's credit," the plaintiff had alleged an inaccuracy)

McCracken v. Ally Bank, 2025 WL 2374831, at *3 (C.D. Cal. Jul. 14, 2025)
Here, Plaintiff does not allege a legal dispute as to who was responsible for an unpaid or late balance, rather, he alleges that he was "never 30 days late on any payment to Ally" and that the CRA Defendants' reporting that his payments were 30 days late was therefore inaccurate or misleading. Opp'n at 6. The Court finds that *Carvalho*, which was decided at the summary judgment phase, does not provide a basis to dismiss Plaintiff's case at this early stage in litigation. *See Serhan v. Hyundai Cap. Am.*, 2023 WL 6787810 at *4 (C.D. Cal. Sept. 07, 2023).

Regalado v. Experian Info. Sols., Inc., 2023 WL 6393222, *4-5 (D. Nev. Sept. 30, 2023) (concluding that, although the plaintiff "admit[ted] that a missed payment occurred when the funds for his ... loan payment did not get withdrawn from his bank account," where the lender "admitted to the processing error and expressly represented to him that the missed payment would not be reported and would not impact his credit report," but nevertheless "shared missed payment

information with the [credit reporting agencies], which [negatively] impacted [the p]laintiff's credit," the plaintiff had alleged an inaccuracy)

For example, in Regalado v. Experian Info. Sols., No. 2:22 Civ. 1309 (RFB) (NJK), 2023 WL 6393222 (D. Nev. Sept. 30, 2023), the defendant consumer reporting agencies moved to dismiss the plaintiff's complaint, in which the plaintiff alleged that he had obtained an auto loan from the defendant lender for which he enrolled in automatic payments; that he informed the defendant lender of a change in the bank account from which the automatic payments were to be drafted; that the defendant lender confirmed the change; that a subsequent automatic payment was not drafted from the plaintiff's bank account; that the plaintiff discovered that the automatic payment had not been drafted from his bank account and contacted the defendant lender in the same month to report the issue; that the defendant lender informed the plaintiff that his bank account information on file was accurate, that the failure to draft the automatic payment from the plaintiff's bank account was a result of the defendant lender's processing error, and that the defendant lender would not notify consumer reporting agencies of the late payment; and that the defendant lender nonetheless reported the missed automatic payment as a late payment to the defendant consumer reporting agencies. Id., at *1-2 (citation omitted). The Regalado Court rejected the defendant consumer reporting agencies' argument that "the information on the report was accurate in so far as [the p]laintiff admit[ted] that a missed payment occurred when the funds for his auto loan payment did not get withdrawn from his bank account," as the plaintiff alleged that the defendant lender **"admitted to the processing error and expressly represented to him that the missed payment would not be reported and would not impact his credit report,"** raising **"a plausible inference that either [the defendant lender] ... failed to communicate the information accurately to the [defendant consumer reporting agencies] ... or the [defendant consumer reporting agencies] ... misreported the information"** themselves. Id., at *4. The Regalado Court further reasoned that, as the defendant lender **"admitted fault to the processing error, told [the p]laintiff the error would not affect his credit, and believe[d] that [the defendant lender] ... reported its fault for the processing error to the"** defendant credit agencies, the plaintiff had plausibly pleaded that the reporting was materially misleading in a way that adversely affected the plaintiff's creditworthiness. Id. (citation omitted).

Likewise, courts have found that a Complaint alleges a factual inaccuracy when the allegation is that the parties agreed and/or there is no dispute regarding the dispositive fact even if the dispute has legal connotations. *Hurst v. Equifax Info. Servs.*, 2021 WL 5926125, *8 (W.D. Tex. Dec. 15, 2021) (the court rejected legal dispute defense in light of plaintiff allegation that the lease was terminated by the Landlord and therefore, there was no dispute that Plaintiff owed no money under the lease)

Hurst v. Equifax, *1
In November 2016, "Plaintiff entered a residential lease with landlord Prado SH, LP d/b/a Prado Student Living Apartments ('Landlord'), with the lease term set to start August 19, 2017, and conclude July 31, 2018." Compl. ¶ 21. A clause within the lease allowed "Armed Services member tenants and their family members and dependents to terminate the lease in the event they receive transfer orders after the date of the lease." *Id.* ¶ 22. When Plaintiff signed the lease, one of her parents "was an Armed Services member stationed at Fort Sam Houston." *Id.* ¶ 23.

In April 2017, Plaintiff's Armed Service parent received transfer orders to Washington. *Id.* ¶ 24. That same month, the Landlord "verbally terminated the lease" after being notified of the transfer order. *Id.* ¶ 25. Nevertheless, the Landlord retained ProCollect to collect an "alleged outstanding balance for the entirety of the terminated lease term," and the Landlord continues to "knowingly and erroneously represent[ ] that the lease was signed in September 2017, after the posting transfer orders were issued." *Id.* ¶¶ 26-27.

*Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)
Rule 15(a) requires a trial court "to grant leave to **amend** 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to **amend**.' " *Lyn–Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 286 (5th Cir.2002)* (citation omitted). A district court must possess a "substantial reason" to **deny** a **request** for     leave     to **amend**, *id.,* but     "leave     to **amend** is     by no **means** automatic." *Halbert v. City of Sherman, 33 F.3d 526, 529 (5th Cir.1994)* (citation omitted). Decisions concerning motions to **amend** are "entrusted to the sound discretion of the district court [.]" *Quintanilla v. Tex. Television, Inc., 139 F.3d 494, 499 (5th Cir.1998)* (citation omitted).

In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir.1981)*.

Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n, 751 F.3d 368, 378 (C.A.5 (La.), 2014)

"Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir.2005) (citation and internal quotation marks omitted). Leave to amend is in no way automatic, but the district court must possess a "substantial reason" to deny a party's request for leave to amend. *Id.* (citation and internal quotation marks omitted). The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Id.* (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. and Indent. Co.,* 376 F.3d 420, 426 (5th Cir.2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile. *Briggs v. Miss.,* 331 F.3d 499, 508 (5th Cir.2003). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *Id.* Therefore, we review the proposed amended complaint under "the

11

same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir.2000) (citation internal and quotation marks omitted).

BOA assessed a fee to Plaintiff's account to which the Plaintiff had submitted her payment of that fee.

BOA falsely reported to the CRAs that the Plaintiff did not submit her payment for the annual fee.

Plaintiff disputed the BOA debt with the CRAs.

The CRAs asked BOA to investigate Plaintiff's dispute.

BOA did not read Plaintiff's dispute letter and reported back to the CRAs that no changes should be made to the account.

Without considering Plaintiff's dispute letter, let alone investigating the issues in her letter, the CRAs followed BOA's recommendation that no changes would be made to the account.